

**FILED**
DEC 17 2007
DEC 17, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Eugene Longino, | 07CV 7079 |
| Plaintiff, | JUDGE BUCKLO |
| v. | MAGISTRATE JUDGE COLE |
| Matteson Imports, and<br>National Auto Finance Corp., | ) ) ) ) |
| Defendants. | ) JURY OF 12 DEMANDED |

### COMPLAINT

**NOW COMES** Plaintiff, Eugene Longino, by and through his attorneys, and, as and for Complaint, states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq., and the implementing regulations contained in Regulation Z, 12 C.F.R. §226. Additionally, Mr. Longino seeks damages for violations of the Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq., Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq., and under the theories of common law fraud, forgery, and willful and wanton conduct.

### II. JURISDICTION AND VENUE

2. Jurisdiction arises under, among others, the Truth in Lending Act, 15 U.S.C. §1640(e). The remaining claims arise from the same transaction, and are so closely related to the foregoing as to create supplemental jurisdiction as contemplated by 28 U.S.C. §1367(a). Defendant Matteson Imports resides at Cook County, Illinois. On information and belief, Defendant National Auto Finance resides in the State of Florida, but Defendant ml does business in Cook County, and therefore venue is appropriate in this district as contemplated by 28 U.S.C. §1391(b)(1).

## III. FACTS

3. On July 28, 2007, Mr. Longino bought a car from Matteson Imports. Exhibit A, First Finance Contract.

4. Several days later, for reasons unknown to Mr. Longino, Matteson Imports asked Mr. Longino to come to the dealership to sign a Second Finance Contract.

5. By that time Mr. Longino no longer wanted the car, so he refused.

6. Whereupon, Matteson Imports proceeded to forge Mr. Longino's signature on the Second Finance Contract (Exhibit B), and assign it to National Auto Finance.

7. National Auto Finance is a holder of the Second Finance Contract (Exhibit B), which provides that any holder of a consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant to the contract or with the proceeds of the contract. All claims asserted against Matteson Imports are asserted on this statutory basis against National Auto Finance, unless specified otherwise.

## IV. CAUSES OF ACTION

### Count I—Truth in Lending Act

8. Mr. Longino re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

9. Mr. Longino is a "consumer" within the meaning of TILA, 15 U.S.C. §1602(h), with respect to the purchase of the car, because Mr. Longino is a natural person who bought the car for personal, family, or household purposes.

10. Matteson Imports is a "creditor" within the meaning of TILA, 15 U.S.C. §1602(f), and Regulation Z, 12 C.F.R. §226.2(a)(17), for purposes of this case, because both Exhibits A and B a binding finance contracts payable in at least four installments and Matteson Imports has had at least four such transactions in a year preceding the filing of the Complaint.

11. TILA, 15 U.S.C. §1638(b)(1), and Regulation Z, 12 C.F.R. §226.17(a)(1) and (b), mandate timely written disclosures of financing terms.

12. The signing of the Retail Installment Contract constituted the consummation of a consumer credit sale under TILA, 15 U.S.C. §1602(g) and (h).

13. By forging Mr. Longino's signature on Exhibit B, Matteson Imports violated TILA by not providing Mr. Longino with Mr. Longino's Truth in Lending disclosures, in writing, before consummation of the transaction, in a form that Mr. Longino could keep. 15 U.S.C. §1638(a).

**WHEREFORE**, Mr. Longino requests that this Honorable Court:

A. Award Mr. Longino damages to which he is entitled;

B. Award Mr. Longino expenses of litigation and costs;

C. Award Mr. Longino's attorneys their fees; and

D. Grant Mr. Longino other relief the Court deems appropriate and just.

**Count II—Equal Credit Opportunity Act: Declaratory Judgment, Injunctive Relief, and Damages**

14. Mr. Longino re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

15. Section 1691(d)(2) of the Act states, in pertinent part:

Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from a creditor.

16. Regulation B, 12 C.F.R. 202.9(a)(1) states:

*When notification is required.* A creditor shall notify an applicant of action taken within:

(i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application;

(ii) 30 days after taking adverse action on an incomplete application, unless notice is provided in accordance with paragraph (c) of this section;

(iii) 30 days after taking adverse action on an existing account; or

(iv) 90 days after notifying the applicant of a counteroffer if the applicant does not expressly accept or use the credit offered.

17. Thus, 15 U.S.C. §1691(d)(2), and Regulation B, 12 C.F.R. 202.9(a)(1), mandate that each applicant against whom adverse action is taken is entitled to a statement of reasons for such action, in writing, from the creditor.

18. Matteson Imports regularly arranges for extension of credit to applicants.

19. Matteson Imports violated 15 U.S.C. §1691(d)(2) and Regulation B, 12 C.F.R. 202.9(a)(1), by not providing Mr. Longino with a written statement, as mandated by ECOA.

20. To this day, Mr. Longino does not know why Matteson Imports canceled the First Finance Contract (Exhibit A).

21. As a result, Mr. Longino suffered damages, including, but not limited to, being deprived of valuable economic information and Mr. Longino's rights to this information under the Act.

**WHEREFORE**, Mr. Longino requests that this Honorable Court:

A. Declare the practice illegal and enjoin the illegal practice complained of;

B. Award Mr. Longino damages to which he is entitled;

C. Award Mr. Longino expenses of litigation and costs;

D. Award Mr. Longino's attorneys their fees; and

E. Grant Mr. Longino other relief the Court deems appropriate and just.

**Count III—Common Law Fraudulent Misrepresentation**

22. Mr. Longino re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

23. Matteson Imports knowingly engaged in common law fraudulent misrepresentation by engaging in the conduct enumerated above, i.e.:

a. **Who:** Someone at Matteson Imports's office, believed to be an agent/employee of Matteson Imports, who forged Mr. Longino's signature on Exhibit B;

b. **What:** False representation that the signature on Exhibit B was that of Mr. Longino;

c. **When:** on or about July 28, 2007;

d. **Where:** At Matteson Imports's place of business;

e. **How:** By forging Mr. Longino's signature without his authority, i.e., writing it on Exhibit B in pen.

24. Matteson Imports engaged in such conduct, or made the foregoing false statements of material facts knowing that they were false, with intent to deceive and mislead Mr. Longino and a potential assignee of Exhibit B, or with reckless disregard for the truth and the rights of Mr. Longino, to induce Mr. Longino and a potential assignee of Exhibit B to act or refrain from acting, and with knowledge that the conduct and false statements created false

understandings on the part of Mr. Longino and a potential assignee, and intending that Mr. Longino and potential assignee rely on the conduct and false statements.

25. Mr. Longino maintained all due diligence. However, he could not protect himself from the crime of forgery, intentionally committed by Matteson Imports, and by theft of his identity, intentionally committed by Matteson Imports.

**WHEREFORE**, Mr. Longino requests that the Court:

A. Award Mr. Longino actual and punitive damages to which he is entitled and declare that Mr. Longino's finance contract is void;

B. Award Mr. Longino expenses of litigation and costs; and

C. Grant Mr. Longino other relief the Court deems appropriate and just.

**Count IV—Illinois Consumer Fraud Act**

26. Mr. Longino re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

### Allegations Common to All Violations

27. Matteson Imports, by its unknown agents/employees, violated the Illinois Consumer Fraud Act (815 ILCS 505/1 et seq.), i.e.:

    a. in the course of trade or commerce (i.e., advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated),

    b. engaged in unfair or deceptive acts or practices, or

    c. concealed, suppressed and omitted material facts, of which Matteson Imports knew at the time of concealment, suppression, or omission,

    d. which resulted in public injury because of violation of statutes with public interest impact and because of potential for repetition,

    e. with intent that Mr. Longino and any potential assignee of Exhibit B rely on its acts, or with intent that Mr. Longino and any potential assignees of Exhibit B rely on its concealment, suppression and omission of material facts. Had Mr. Longino known of the unfair or deceptive acts or practices, or of the concealment, suppression and omission, Mr. Longino would have acted differently, because all of the following misrepresentations, concealments, suppressions, and omissions were material to Mr. Longino.

28. On the day of the transaction, Matteson Imports forged Mr. Longino's signature on Exhibit B, as described in Count III.

### Allegation Regarding Punitive Damages

29. The above-described conduct was willful or intentional and done with evil motive or reckless indifference to the rights of Mr. Longino, so as to warrant an award of punitive damages.

### Requested Relief

**WHEREFORE**, Mr. Longino requests that the Court:

A. Award Mr. Longino damages to which he is entitled, including punitive damages, as appropriate, and declare the finance contract void;

B. Award Mr. Longino expenses of litigation and costs;

C. Award Mr. Longino's attorneys their fees; and

D. Grant Mr. Longino other relief the Court deems appropriate and just.

### Count V—Common Law Forgery

30. Mr. Longino re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

31. In violation of 720 ILCS 5/17-3, unknown agents/employees of Matteson Imports forged Mr. Longino's signature of the finance contract, by making a false writing on it.

32. The finance contract is an instrument that is apparently capable of defrauding.

33. The unknown agents/employees of Matteson Imports intended to defraud Mr. Longino and potential assignee of the contract by forging Mr. Longino's signature.

**WHEREFORE**, Mr. Longino requests that the Court:

A. Award Mr. Longino damages to which he is entitled, including punitive damages, as appropriate, and declare the finance contract void;

B. Award Mr. Longino expenses of litigation and costs;

C. Grant Mr. Longino other relief the Court deems appropriate and just.

### Count VI--Common Law Willful and Wanton Misconduct

34. Mr. Longino re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

35. Matteson Imports owed a duty of fair and honest dealing to Mr. Longino when the parties entered into a buyer-seller relationship. As described above, Matteson Imports forged Mr. Longino's signature in breach of duty of fair dealing. The forgery was a willful and wanton act, intended by Matteson Imports, as there are no accidental forgeries. The act of forgery proximately caused Mr. Longino damages, by binding him to a finance contract and creating financial liability for Mr. Longino.

**WHEREFORE**, Mr. Longino requests that the Court:

A. Award Mr. Longino damages to which he is entitled, including punitive damages as appropriate, and declare the finance contract void;

B. Award Mr. Longino expenses of litigation and costs;

C. Grant Mr. Longino other relief the Court deems appropriate and just.


**EUGENE LONGINO**

By: _[signature]_
One of his Attorneys


Dmitry N. Feofanov

CHICAGOLEMONLAW.COM, P.C.
404 Fourth Avenue West
Lyndon, IL  61261
815/986-7303

**RETAIL INSTALLMENT CONTRACT – MOTOR VEHICLE – SIMPLE INTEREST**

No. 259778

### FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $2200.00 |
|---|---|---|---|---|
| 15.50 % | $ 9274.50 | $ 16065.00 | $ 25339.50 | $ 27539.50 |

**Your payment schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 74 | $ 337.86 | monthly beginning 09/11/2007 |
| 1 | $ 337.86 | DUE ON 11/11/2013 |

**Security:** You are giving a security interest in the goods being purchased and in any moneys, credits or other property of yours in the possession of the Assignee, on deposit or otherwise.

**Late Charge:** If any payment is ten (10) days late, you will be charged: i) 5% of the installment if the installment is in excess of $200.00; or ii) $10.00 if the installment is for $200.00 or less.

**Prepayment:** You have the right to prepay the unpaid balance in full or in part at anytime without penalty. See your contract terms below and on the reverse side for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties and further information about security interests.

### Itemization of Amount Financed

| | |
|---|---|
| Cash Price | $ 16652.53 |
| Less Cash Downpayment | $ 1000.00 |
| Value of Trade-In Trade $ 1200.00 | |
| Lien Payoff $ N/A | |
| N/A | Net Trade $ 1200.00 |
| Amounts Paid on Your Account | |
| Unpaid Balance of Cash Price | $ 14452.53 |
| Amount Paid to Others for You *WE MAY BE RETAINING A PORTION OF THIS AMOUNT | |
| Unpaid Balance Due on Trade-In | N/A |
| 1996 DAIMLER CH LHS | |
| Year, Make, Model of Buyer's Trade-In | |
| (Paid to) N/A | |
| Insurance Companies: | |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| Public Officials (Licenses, Title & Taxes) | $ 1553.99 |
| Paid to ERT Service Provider for Optional ERT Fee | N/A |
| To N/A | N/A |
| To DOC FEE PDTODLR | 58.48 |
| To N/A | N/A |

Buyer(s): **EUGENE P. LONGINO**   (Names)   **10157 S. WALLACE**   (Residence Address)   **CHICAGO**   (City)   **IL**   (State)   **60628**   (Zip)

Buyer(s): N/A (Names)

Seller: **MATTESON IMPORTS** (Corporate Firm or Trade Name)   **5355 MILLER CIRCLE DRIVE** (Business Address)   **MATTESON**, **IL**   **60443**

Seller hereby sells and Buyer or Buyers, jointly and severally, hereby purchase the following motor vehicle with accessories and equipment thereon for the deferred payment price and on the terms set forth in this contract. Buyer acknowledges delivery and acceptance of said motor vehicle in good condition.

| New or Used | Year | Make of Vehicle | Model | Body Style | No. Cyl. | Serial Number | Body Color | Top Color | Key No. |
|---|---|---|---|---|---|---|---|---|---|
| DEMO | 2006 | KIA | OPTIMA | 4DR | 4 | KNAGE123965067461 | PEARL_W | | |

Buyer Promises to pay to the order of Seller at the offices of: _____ (Assignee) located in _____ Illinois the Amount Financed shown above together with a Finance Charge on the principal balance of the Amount Financed from time to time unpaid at the rate of 15.50 % per annum from date until maturity in 74 installments of $ 337.86 each and a final installment of $ 337.86 beginning on SEPTEMBER 11 2007 and continuing on the same day of each successive month thereafter until fully paid. All payments shall be applied first to accrued Finance Charge and the balance to principal. The Finance Charge has been computed on the scheduled unpaid balances of the Amount Financed on the assumption that all scheduled installments will be paid when due. Guarantor, if any, guarantees collection of all amounts due under this contract upon failure of the Seller to collect from the Buyer named herein.

**SECURITY INTERESTS:** Seller is granted a purchase-money security interest in the motor vehicle described above and all accessions under the Illinois Uniform Commercial Code until the Total of Payments and all future indebtedness for taxes, liens, repairs and insurance premiums advanced by holder hereunder are paid in full. Buyer grants assignee the right of set-off or lien on any moneys, credits or other property of Buyer in possession of the Assignee, on deposit or otherwise, excepting IRA or similar deposits. Seller is also granted a security interest in any premium rebates for insurance or service contracts, if financed hereunder, in the proceeds of any insurance or service contract on the motor vehicle, and in the proceeds of any credit life and/or accident and death insurance financed hereunder, until all amounts due under this contract are paid in full.

**ACCELERATION:** Buyer agrees that (1) if Buyer shall default in the payment of any installment of the Total of Payments or any other indebtedness due hereon; or (2) Buyer shall fail to perform any agreement or warranty made by Buyer herein; or (3) if the motor vehicle shall be lost, stolen, substantially damaged, destroyed, sold, encumbered, removed, concealed, attached or levied upon; or (4) if the motor vehicle shall be seized or forfeited for violation of any law or ordinance, State, Federal or Municipal; or (5) a proceeding under any bankruptcy or insolvency statute shall be instituted by or against Buyer or Buyer's business or property, or Buyer shall make an assignment for benefit of creditors; or (6) if Buyer shall die or be adjudged incompetent; or (7) if holder shall, for reasonable cause, deem itself insecure; or (8) if Buyer shall fail to keep the motor vehicle fully insured for the entire term of this contract, the holder may declare all unpaid installments of the Total of Payments and all other indebtedness secured hereby immediately due and payable, without notice or demand.

**PREPAYMENT:** THE BUYER MAY PREPAY IN FULL OR IN PART THE UNPAID BALANCE OF THE CONTRACT AT ANY TIME WITHOUT PENALTY.

**DELINQUENCY CHARGE:** If any payment is ten (10) days late, you will be charged: i) 5% of the installment if the installment is in excess of $200.00, or ii) $10.00 if the installment is for $200.00 or less. In addition, Buyer agrees to pay reasonable attorneys' fees, costs and expenses incurred in the collection or enforcement of the debt or in realizing on the collateral. Buyer agrees to pay Finance Charges after maturity of the final installment or after acceleration upon default at the Annual Percentage Rate stated herein so long as there exists any uncured default hereunder, all without relief from valuation or appraisement laws.

**INSURANCE AGREEMENT:** Motor Vehicle Damage or Loss Insurance is required by Seller. (Buyer may choose the person through whom the insurance is to be obtained.) If such insurance is to be obtained through Seller, the cost for a term of _____ N/A months will be $ _____ N/A.

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT**

Credit Insurance is not required by Seller nor is it a factor in approval of the extension of credit. No credit insurance is to be provided unless the Buyer signs the appropriate authorization below. Group Credit Insurance is available for the term of the credit upon acceptance...

and all future indebtedness for taxes, liens, repairs and insurance premiums advanced by holder hereunder are paid in full. Buyer grants assignee the right of set-off or lien on any moneys, credits or other property of Buyer in possession of the assignee, on deposit or otherwise, excepting IRA or similar deposits. Seller is also granted a security interest in any premium rebates for insurance or service contracts if financed hereunder, in the proceeds of any insurance or service contract on the motor vehicle, and in the proceeds of any credit life and/or accident and health insurance financed hereunder, until all amounts due under this contract are paid in full.

ACCELERATION: Buyer agrees that (1) if Buyer shall default in the payment of any installment of the Total of Payments or any other indebtedness due hereon; or (2) Buyer shall fail to perform any agreement or warranty made by Buyer herein; or (3) if the motor vehicle shall be lost, stolen, substantially damaged, destroyed, sold, encumbered, removed, concealed, attached or levied upon; or (4) if the motor vehicle shall be seized or forfeited for violation of any law or ordinance, State, Federal or Municipal; or (5) a proceeding under any bankruptcy or insolvency statute shall be instituted by or against Buyer or Buyer's business or property, or Buyer shall make an assignment for benefit of creditors; or (6) if Buyer shall die or be adjudged incompetent; or (7) if holder shall, for reasonable cause, deem itself insecure; or (8) if Buyer shall fail to keep the motor vehicle fully insured for the entire term of this contract; the holder may declare all unpaid installments of the Total of Payments and all other indebtedness secured hereby immediately due and payable, without notice or demand.

PREPAYMENT: THE BUYER MAY PREPAY IN FULL OR IN PART THE UNPAID BALANCE OF THE CONTRACT AT ANY TIME WITHOUT PENALTY.

DELINQUENCY CHARGE: If any payment is ten (10) days later you will be charged: i) 5% of the installment if the installment is in excess of $200.00, or ii) $10.00 if the installment is for $200.00 or less. In addition, Buyer agrees to pay reasonable attorneys fees, costs and expenses incurred in the collection or enforcement of the debt or in realizing on the collateral. Buyer agrees to pay Finance Charges after maturity of the final installment or after acceleration upon default at the Annual Percentage Rate stated herein so long as there exists any uncured default hereunder, all without relief from valuation or appraisement laws.

INSURANCE AGREEMENT: Motor Vehicle Damage or Loss Insurance is required by Seller. (Buyer may choose the person through whom the insurance is to be obtained. If such insurance is to be obtained through Seller, the cost for a term of ____N/A____ months will be $ ____N/A____.

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT

Credit insurance is not required by Seller nor is it a factor in approval of the extension of credit. No credit insurance is to be provided unless the Buyer signs the appropriate authorization below. Group Credit insurance is available for the term of the credit upon acceptance by insurer at the following costs:

Credit Life Insurance $ ____N/A____            Credit Disability Insurance $ ____N/A____

I DO NOT want Credit Life or Disability Insurance.

(Age of Insured)  (Signature)  (Date)   (Age of Insured)  (Signature)  (Date)   (Signature) 07/28/07 (Date)
    N/A            N/A         N/A          N/A             N/A         N/A                   07/28/07

SEE REVERSE HEREOF FOR INFORMATION ON POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM.

### NOTICE OF PROPOSED GROUP CREDIT LIFE INSURANCE

If a charge is made above for credit life insurance and if such insurance is to be procured by assignee, the undersigned takes notice that the decreasing term insurance written under a Group Credit Life Insurance Policy is to be purchased on the life of the Buyer or Buyers who signed above requesting it, subject to acceptance by the insurer and issuance of a certificate by:

____N/A____ (Insurer)        ____N/A____        ____N/A____ (Home Office Address)

The amount of premium is shown above. The term of insurance will commence on the date of this contract and expire on the originally scheduled maturity date of the indebtedness. The initial amount of insurance will be equal to the initial indebtedness and will decrease as any payment is made on the indebtedness in an amount computed by multiplying the amount of the payment by the ratio of initial insurance over the initial indebtedness. The proceeds of any insurance paid will be applied to reduce or extinguish the indebtedness. If insurance is terminated prior to the scheduled maturity date of the indebtedness, any premium refund will be paid or credited promptly to the person entitled thereto. Refund formula is on file with the Director of Insurance and with creditor. All of the foregoing is subject to the provisions of the certificate of insurance to be issued.

Other insurance: ____N/A____ (Type of Insurance), the cost for a term of ____N/A____ months will be $ ____N/A____.

BUYER AGREES THAT THE PROVISIONS ON THE REVERSE SIDE HEREOF SHALL CONSTITUTE A PART OF THIS RETAIL INSTALLMENT CONTRACT AND BE INCORPORATED HEREIN. If this contract evidences the sale of a used motor vehicle (1) Buyer acknowledges receipt of the original or a true copy of the "Buyer's Guide" form displayed by Seller on the side window of the used vehicle; and (2) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS USED VEHICLE IS A PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

DOCUMENTARY FEE: A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 1992, WAS $40. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $40 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

The Annual Percentage Rate may be negotiable with the Seller. If this Contract is assigned, Seller may retain or receive a portion of the Finance Charge.

NOTICE TO BUYER: 1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge. Buyer acknowledged receipt of a fully completed copy of this contract executed by both Seller and Buyer. Guarantor, if any, acknowledged receipt of completed copies of this contract and of Explanation of Guarantor's Obligation.

CO-BUYER: A Co-Buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the vehicle or (2) is a parent or spouse of the Buyer, or (3) will be listed as an owner on the vehicle's title. By signing below, (1) I confirm that I will actually receive possession of the vehicle or will use it, or that I am a parent or spouse of the Buyer, or that I will be listed as an owner on the vehicle's title; (2) I agree to be primarily obligated under this contract; and (3) I consent to the Creditor having a security interest in the vehicle.

Dated: 07/28/2007

Seller: MATTESON IMPORTS
By: _[signature]_  TITLE
Guarantor: 

I hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein.

Buyer(s) acknowledges receipt of a fully completed and executed copy of this Contract.

### RETAIL INSTALLMENT CONTRACT

Buyer _[signature]_
Buyer ____N/A____

INSTRUCTIONS: If parent, spouse, or other person who is or will be listed as an owner on the vehicle's title is a co-buyer, sign above. Other co-signers, sign on the Guarantor line.

Copyright 2004  ILLIANA FINANCIAL, INC., Elmhurst, IL (All Rights Reserved)    BUYER'S COPY                     Form IFI-26 (Rev. 6/06)

## RETAIL INSTALLMENT CONTRACT
### SIMPLE FINANCE PLAN

DEAL # 259278

Buyer Name and Address (Including County and Zip Code): EUGENE F LUNSFORD, 10457 S WALLACE, CHICAGO IL 60628

Creditor (Name and Address): MATTESON IMPORTS, 5355 MILLER CIRCLE DRIVE, MATTESON, IL 60443

AUG 0 2 2007

You, the Buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor the Amount Financed and Finance Charge according to the payment schedule shown below. The Finance Charge is figured on a daily basis at the Annual Percentage Rate on the unpaid balances of the Amount Financed.

**Description of Vehicle:** You agree to buy and the Creditor agrees to sell the following vehicle:

| New or Used | Year | Make and Model | Body Type | Vehicle Identification No. | Use for Which Purchased |
|---|---|---|---|---|---|
| DEMO | 2006 | KIA OPTIMA | 4DR | KNAGE123965067461 | Personal / Agricultural |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE (yearly rate) | FINANCE CHARGE (dollar amount credit will cost you) | Amount Financed (amount of credit provided to you or on your behalf) | Total of Payments (amount you will have paid after making all payments as scheduled) | Total Sale Price (total cost of purchase on credit, including down payment of $2200.00) |
|---|---|---|---|---|
| 15.50 % | $9114.00 | $16065.00 | $25179.00 | $27379.00 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due | Or as Follows |
|---|---|---|---|
| 75 | 335.72 | Monthly beginning 08/27/2007 | |
| N/A | | | |

**Late Charge.** If a payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late, with a minimum charge of $10.

**Prepayment.** If you pay off all your debt early you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See the other side of this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, and security interest.

### ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including any accessories, services, and taxes) ... $19048.52 (1)
2. Total Downpayment (if negative enter "0" and see 4J below)
   - Gross Trade-in $ 2200.00
   - Less Lien $ 1200.00
   - Net Trade-in $ 1000.00
   - Payoff by seller $ N/A
   - Cash $ 1000.00
   - Other (Describe): N/A
   - Your Trade-in is a 1996 DAIMLER LHS ... $ 2200.00 (2)
3. Unpaid Balance of Cash Price (1 minus 2) ... $15848.52 (3)
4. Other Charges Including Amounts Paid to Others on Your Behalf (Seller, holder, or their affiliates may be keeping part of these amounts.)
   - A. Cost of Required Physical Damage Insurance Paid to the Insurance Company Named Below—Covering Damage to the Vehicle ... $ N/A
   - B. Cost of Optional Mechanical Repair Insurance Paid to the Insurance Company Named Below—Covering Certain Mechanical Repairs ... $ N/A
   - C. Cost of Optional Credit Insurance Paid to Insurance Company or Companies Named Below: Life $ N/A Disability, Accident and Hazard $ N/A ... $ N/A
   - D. Official Fees Paid to Government Agencies ... $ N/A
   - E. Taxes Not Included in Cash Price ... $ N/A
   - F. Government License and/or Registration Fees (Itemize) ... $ 15.00 / $ 78.00
   - G. Government Certificate of Title Fees ... $ 65.00
   - H. DOCUMENTARY FEE: A documentary fee is not an official fee. A documentary fee is not required by law, but may be charged to buyers for handling documents and performing services related to closing of a sale. The base documentary fee beginning January 1, 1992, was $40. The maximum amount that may be charged for a documentary fee is the base documentary fee of $40 subject to an annual rate adjustment equal to the percentage of change in the Bureau of Labor Statistics Consumer Price Index. This notice is required by law. ... $ 58.48
   - I. Other Charges (Seller must identify who will receive payment and describe purpose)
     - to N/A for N/A $ N/A
     - to N/A for N/A $ N/A
     - to ___ for ___ $ N/A
     - to ___ for ___ $ N/A
     - to ___ for ___ $ N/A
     - to ___ for ___ $ N/A
   - J. Net trade-in payoff to N/A $ N/A
   - Total Other Charges and Amounts Paid to Others on Your Behalf ... $ 216.48 (4)
5. Amount Financed - Unpaid Balance (3 + 4) ... $16065.00 (5)

**Insurance.** If any insurance is checked below, the policies or certificates issued by the Companies named will describe the terms and conditions.

Required Physical Damage Insurance. Physical damage insurance is required, but you may obtain it from anyone you want who is acceptable to the Creditor. The cost of the insurance is shown in 4A above. Insurance Company: N/A

Optional Mechanical Repair Insurance. The cost of the insurance is shown in 4B of the itemization above. Insurance Company: N/A

[remainder of form: checkboxes for Collision, Comprehensive, Fire Theft and Combined Additional Coverage — all N/A]

**Optional Credit Insurance.** Credit life insurance and credit disability insurance are not required to obtain credit and will not be provided unless you sign and agree to pay the additional cost. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. If you want the insurance to be obtained by the Creditor, check the insurance desired and sign below. If you have payments on loans, Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life terminates and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

Check the Insurance desired: □ N/A Buyer □ Co-Buyer □ Both □ Disability, Accident and Health (Buyer Only)

(Name of Insurer) ___ (Home Office Address) ___

The policy will pay amounts due on this contract up to $ N/A . Total policy coverage for this and any other loan included with contracts is limited to $ ___

APPROVAL: I DESIRE TO OBTAIN THE CREDIT INSURANCE CHECKED ABOVE FOR THE PERSON PROPOSED FOR INSURANCE.

X Buyer Signature ___ Date ___   X Co-Buyer Signature ___ Date ___

THE INSURANCE, IF ANY, REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.

### NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM

(1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT CONTRACT EARLY. (2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR CONTRACT, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR CONTRACT, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

See the other side of this contract for other important agreements, including your agreement to give the Creditor a security interest in insurance premiums and proceeds.

Do not sign this contract on a Sunday.

### Notice to the buyer.

1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

You agree to the terms of this contract. You confirm that before you signed this contract, the Creditor gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

### RETAIL INSTALLMENT CONTRACT

Buyer Signs X ___  Date 07/28/2007   Co-Buyer Signs X ___  Date ___

Co-Buyer—A Co-Buyer is a person who agrees to be personally responsible for paying the entire debt and who (1) initially receives the vehicle or (2) is a parent or spouse of the Buyer, or (3) will not be listed as an owner on the vehicle title. Co-Buyer confirms that the Co-Buyer will sign above and carefully read and understands the terms of the Co-Buyer contract.

Guarantor—A Guarantor is a person who may be responsible for paying the entire debt if the Creditor cannot collect the amount owed from the Buyer and any Co-Buyer.

Guarantor Signs X ___  Date ___  Address ___

I hereby guarantee the collection of the above described amount upon default of the Seller named herein to collect said amount from the Buyer named herein to the extent having a security interest in the vehicle.

Other Owners—An Other Owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The Other Owner agrees to the security interest and the terms of the security interest.

Other Owner signs here X ___  Date ___  Address ___

### NO PUBLIC LIABILITY INSURANCE ISSUED WITH THIS TRANSACTION

Seller assigns its interest in this contract to □ GMAC □ ___ (Assignee) under the terms of Seller's agreement(s) with Assignee.

Seller: MATTESON IMPORTS   By ___  Title ___

Form FL IL 5/2005 (For use in the State of Illinois) (1 of 5)
Copyright 2005 GMAC. All Rights Reserved.

Ex. B